IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

AMMIE HUNT, *individually and as guardian ad litem for N.H. and L.H., her minor children*,

Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

Defendant.

Case No. 6:26-cv-00325-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Ammie Hunt, and Ammie Hunt on behalf of her minor children, N.H. and L.H, brings this action against Defendant United States of America, alleging that the United States Coast Guard ("Coast Guard") negligently maintained its military housing. Pl.'s First Am. Compl. ("FAC") ¶ 2, ECF No. 14. Defendant asks this Court to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Def.'s Mot. 4, ECF No. 16.

Because Plaintiff sufficiently states a claim and Defendant's actions do not fall within the Federal Tort Claim Act's ("FTCA") discretionary function exception, Defendant's Motion is DENIED.

**BACKGROUND**

The Coast Guard owns, operates, and manages Coast Guard Military Housing property in Cape Hart, Coos Bay, Oregon. FAC ¶ 1–2. In September 2022, Plaintiff Ammie Hunt, along with

her two daughters, N.H. and L.H., moved into a property (the “Dwelling”) that is part of the Coast Guard Military Housing. *Id.* ¶¶ 1, 5. In June 2024, Plaintiff’s husband discovered mold in the Dwelling and requested that Defendant investigate potential sources of excess moisture. *Id.* ¶ 6. Defendant did not hire a mold inspector or perform testing until November 2024—five months later. *Id.* ¶ 7. Despite Plaintiff’s request, Defendant did not provide her with copies of the inspection. *Id.*

Plaintiff hired her own mold investigator on November 22, 2024. *Id.* ¶ 8. This investigation revealed significant mold contamination in the attic caused by improper ventilation and inadequate air circulation. *Id.* ¶ 9. Sometime after the inspection, Plaintiff requested to have her family moved to a different dwelling. *Id.* ¶ 10. Defendant did not authorize Plaintiff’s family to move until January 15, 2025. *Id.* As a result of the mold exposure, Plaintiff and her children suffered several adverse health effects, including chronic fatigue, rashes, and sleep disturbances. *Id.* ¶ 12.

In her First Amended Complaint, Plaintiff brings two claims against Defendant. *Id.* ¶¶ 15–21. The first claim alleges Defendant violated the Oregon Residential Landlord Tenant Act (ORLTA) by “failing to maintain the Dwelling in a habitable condition by preventing excessive interior dampness and related hazardous conditions . . . and assuring that the Dwelling was safe, clean, sanitary and free from all accumulation of filth and debris for normal and reasonably foreseeable uses . . .” *Id.* ¶ 16. In her second claim, Plaintiff alleges Defendant was negligent by “failing and refusing to inspect, install, maintain, remediate or keep the Dwelling in good repair, clean, healthy and free by allowing a toxic infestation of mold and/or other contaminants.” *Id.* ¶ 20.

Defendant moves to dismiss on two grounds. Def.’s Mot. 4. First, Defendant argues Plaintiff fails to state a claim for relief under Rule 12(b)(6). *Id.* Second, Defendant argues the Coast

Guard's conduct is shielded by the discretionary function exception of the FTCA, depriving the Court of subject matter jurisdiction under Rule 12(b)(1). *Id.*

## I. **<u>Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim</u>**

## **<u>LEGAL STANDARD</u>**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 679.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Once the complaint is stripped of conclusory statements, the judge then applies "judicial experience and common sense" and considers "obvious alternative explanations" to determine if the complaint states a plausible cause of action. *Iqbal*, 556 U.S. at 679, 682 (quoting *Twombly*, 550 U.S. at 567) (internal quotation marks omitted). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims; conclusory assertions will not suffice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Thornhill Pub. Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## **<u>DISCUSSION</u>**

Defendant contends that the Complaint is deficient under Rule 8(a)(2). Def.'s Mot. 4. Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). At the core of her Complaint, Plaintiff alleges that Defendant failed to maintain the Dwelling in a habitable condition. Under the ORLTA, a dwelling is considered uninhabitable if it lacks effective waterproofing or proper ventilation. ORS § 90.320. Plaintiff's Complaint specifically alleges Defendant's failure to prevent "excessive interior dampness" led to an accumulation of toxic mold in the Dwelling. FAC ¶ 16. Plaintiff's Complaint further alleges that Defendant's five-month delay in inspecting and remediating the mold constitutes negligence under the FTCA. FAC ¶¶ 7, 20.

Defendant argues Plaintiff's allegations are conclusory statements "unless one accepts the proposition that any amount of mold in the Dwelling was *ipso facto* evidence [that Defendant] had negligently failed to maintain the Dwelling." Def.'s Mot. 6. The Court disagrees. Common sense suggests that one's failure to keep a dwelling free from excessive interior dampness may result in the intrusion of moisture, mold, and related toxins. The Court finds it plausible that Defendant's failure to remediate, repair, and clean the accumulation of toxic mold caused Plaintiff and her family to suffer injury. *See generally Waldner v. Stephens*, 345 Or. 526, 532–42 (2008) (en banc) (discussing landlord duties with respect to maintaining habitable conditions and addressing the intrusion of water and moisture in a dwelling). While Plaintiff's allegations certainly do not prove her claim, they sufficiently allege more than the mere possibility of misconduct.

Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff sufficiently pleaded a plausible claim for relief. Accordingly, Defendant's 12(b)(6) Motion is DENIED.

## II. <u>Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss requires a federal court to ensure its subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where the court lacks subject matter jurisdiction, it must dismiss a claim. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A defendant may move to dismiss under Rule 12(b)(1) when they believe the allegations in the complaint are insufficient to establish federal jurisdiction. *Id.* When evaluating an attack on jurisdiction, the court accepts as true all factual allegations set forth in the complaint. *United States v. One 1997 Mercedes E420*, 175 F.3d 1129, 1130 n.1 (9th Cir. 1999).

## DISCUSSION

The FTCA grants subject matter jurisdiction to federal courts for tort claims arising out of the negligent conduct of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). The FTCA allows the government to be found negligent "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Where the discretionary function exception to the FTCA applies, "the United States has *not* waived its sovereign immunity and [the Court] lacks subject matter jurisdiction over the plaintiffs' claims." *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016) (emphasis added).

As a remedial statute, the FTCA should be "construed liberally, and its exceptions should be read narrowly." *O'Toole v. United States*, 295 F.3d 1029, 1037 (9th Cir. 2002). One such exception rejects claims predicated on a federal employee's "exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467

U.S. 797, 808 (1984). Proving that the discretionary function exception applies is the government's burden. *GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174 (9th Cir. 2002).

Courts use a two-pronged test to determine whether the discretionary function exception precludes the exercise of jurisdiction. *Id.* at 1173. First, a court asks whether the challenged actions are discretionary, meaning they "involve[] an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). If the actions are controlled by mandatory policy, then no discretion was exercised and the exception does not apply. *United States v. Gaubert*, 499 U.S. 315, 324 (1991).

If, however, an element of judgment is involved, a court moves to the second prong and assesses "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. The discretionary function exception "prevent[s] judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 536–37 (quoting *Varig Airlines*, 467 U.S. at 814).

Applying the first prong, the Court asks whether there was a federal statute, regulation, or policy mandating or specifically directing the Coast Guard's course of action relating to the maintenance of the Dwelling. *See Nanouk v. United States*, 974 F.3d 941, 945–46 (9th Cir. 2020); *see also Miller v. U.S.*, 163 F.3d 591, 594 (9th Cir. 1998). Neither party points to any statute or regulation establishing the Coast Guard's compulsory course of action with respect to reports of moisture intrusion and mold accumulation in Coast Guard Military Housing. Accordingly, the Court assumes the first prong is satisfied in the Defendant's favor.

Applying the second prong, the Court cannot hold that Defendant's failure to maintain, inspect, or remedy the mold in the Dwelling is within the realm of conduct that the discretionary

function exception was designed to protect. To determine whether conduct falls within the realm of protection, courts look to whether the action was "grounded in social, economic, and political policy." *Varig Airlines*, 467 U.S. at 814. "[P]articularly when the government is charged with acting or failing to act in a way that jeopardizes safety, there must be a legitimate *policy* consideration on the other side of the balance before the discretionary function exception can be held to apply." *Nanouk*, 974 F.3d at 949.

Aside from vague references to "limited government resources" and the "prioritization of demands for government resources," Defendant does not supply any policy considerations that invoke the discretionary function exception. Def.'s Mot. 12. Ninth Circuit precedent expressly prohibits Defendant from "us[ing] the mere presence of budgetary concerns to shield allegedly negligent conduct from suit under the FTCA." *Whisnant v. United States*, 400 F.3d 1177, 1184 (9th Cir. 2005). Because "[b]udgetary constraints underlie virtually all governmental activity," Defendant must show that its action or inaction was the result of legitimate policy considerations and not the result of "budget-driven shirking." *ARA Leisure Servs. v. United States*, 831 F.2d 193, 196 (9th Cir. 1987); *Whisnant*, 400 F.3d at 1184. Here, Defendant fails to explain what other legitimate policy consideration counterweighs the Plaintiff's reported safety concerns. *Contra Nanouk*, 974 F.3d at 948 (finding that a "limited resources" policy rationale only succeeded because the military adopted a system triaging simultaneous remediation efforts on several large, contaminated sites).

Generally, matters of routine maintenance are not protected by the discretionary function exception because scheduled and routine acts do not involve the weighing of social, economic, and political policy. *Terbush v. United States*, 516 F.3d 1125, 1133 (9th Cir. 2008). *See also O'Toole*, 295 F.3d at 1037 (deciding the failure to clean irrigation canal was a "mundane question

of routine ditch maintenance" unsusceptible to policy analysis); *ARA Leisure Servs.*, 831 F.2d at 196 (holding the failure to maintain a roadway pass was "ordinary garden-variety negligence" unprotected by the discretionary function exception (quoting *Aslakson v. United States*, 790 F.2d 688, 694 (8th Cir. 1986)) (internal quotations omitted)).

The maintenance at issue here—preventing and remediating an accumulation of toxic mold—implicates health and safety. "[M]atters of scientific and professional judgment—particularly judgments concerning safety—are rarely considered to be susceptible to social, economic, or political policy." *Whisnant*, 400 F.3d at 1181. *See also Chang v. United States*, 139 F.4th 1087, 1097–98 (9th Cir. 2025) (classifying the failure to fill a hole in popular lawn area as "basic safety maintenance" for which any landowner would be held responsible); *Bolt v. United States*, 509 F.3d 1028, 1034–35 (9th Cir. 2007) (holding that snow and ice removal from a parking lot "obviously implicated residents' safety" and did not fall within the discretionary function exception).

*Whisnant* is instructive here. In *Whisnant*, a delivery man suffered several adverse health effects after making weekly deliveries to a mold-contaminated commissary operated and maintained by the Defense Commissary Agency (DeCA). *Whisnant*, 400 F.3d at 1179–80. DeCA regulations required periodic safety inspections, but DeCA employees could decide how and when to conduct the inspections. *Id.* The *Whisnant* court concluded that the discretionary function exception did not shield DeCA's negligent maintenance of the commissary because "removing an obvious health hazard is a matter of safety and not policy." *Id.* at 1183. DeCA's duty to maintain the commissary free from the "accumulation of toxic mold" was a matter of scientific and professional judgment, devoid of economic, social, or political policy considerations. *Id.*

Here, Plaintiff alleges that Defendant's failure to maintain the Dwelling and remediate a known health hazard jeopardized her family's safety. FAC ¶¶ 16, 20. Plaintiff's Complaint clearly alleges that Defendant failed to maintain the Dwelling in clean and healthy condition as well as remediate and repair the Dwelling after notice of the mold. *Id.* ¶ 20. As a result of Defendant's inaction, Plaintiff alleges her family suffered several adverse health effects. *Id.* ¶ 12.

As *Whisnant* makes clear, failing to remediate an obvious health hazard—like mold in military-managed housing—is hardly the type of governmental activity that Congress desired to protect.

At this stage, Defendant fails to demonstrate how its response to Plaintiff's maintenance requests and the known accumulation of toxic mold was grounded in economic, social, or political policy considerations. Accordingly, Defendant fails the second prong, and its conduct is not shielded by the discretionary function exception. Defendant's Motion to Dismiss for lack of subject matter jurisdiction is DENIED.

**CONCLUSION**

For the reasons above, Defendant's Motion to Dismiss, ECF No. 16, is DENIED.

IT IS SO ORDERED.

DATED this 30th day of October, 2026.

s/Michael J. McShane

MICHAEL J. McSHANE
UNITED STATES DISTRICT JUDGE